UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:18-cv-22863-DPG

YACHT CLUB AT PORTOFINO
CONDOMINIUM ASSOCIATION, INC.,

     *Plaintiff,*

v.

CENTURY SURETY COMPANY,
MT. HAWLEY INSURANCE COMPANY,
COLUMBIA CASUALTY COMPANY,
TUDOR INSURANCE COMPANY,
WILSHIRE INSURANCE COMPANY, AND
AMTRUST INTERNATIONAL
UNDERWRITERS LIMITED,

     *Defendants.*

_____/

**YACHT CLUB AT PORTOFINO CONDOMINIUM ASSOCIATION,
INC.'S RESPONSE IN OPPOSITION TO WILSHIRE INSURANCE
COMPANY'S MOTION TO DISMISS COUNT V OF PLAINTIFF'S
COMPLAINT**

Yacht Club at Portofino Condominium Association, Inc. ("YCP"), pursuant to Southern

District of Florida Local Rule 7.1(c), submits its Response in Opposition to Wilshire Insurance

Company's ("Wilshire") Motion to Dismiss Count V of Plaintiff's Complaint [D.E. 31]

("Motion"), as follows:

**INTRODUCTION AND BACKGROUND**

This action for breach of contract and declaratory relief arises from lawsuits styled *Ger v.*

*The Yacht Club at Portofino Condo. Ass'n, et al.*, Case No. 13-38303 CA 01 (Fla. Cir. Ct.

Miami-Dade Cnty. filed Dec. 11, 2013) (the "Ger Action") and *Ger v. New Beach Constr.*

*Partners Co.,* Case No. 15-3894 CA 01 (Fla. Cir. Ct. Miami-Dade Cnty. filed Feb. 18,2015) (the

"New Beach Action") (collectively, "Underlying Actions").

Wilshire issued and delivered to YCP two consecutive Commercial General Liability

Policies covering the time period October 2, 2011 to October 2, 2013 (collectively, the

"Policies").  D.E. 1-2 at 396-489.  The Policies afford the following limits:  $1,000,000.00 per

occurrence and $2,000,000.00 General Aggregate; the "Products/Completed Operations

Aggregate Limit" is "Included."  *Id.*

Wilshire has refused to defend and indemnify YCP against the Underlying Actions,

breaching its personal obligations to and abandoning YCP and, in violation of Florida law,

delegating its duties to other carriers already defending YCP.  YCP accordingly filed its breach

of contract claim in Florida state court against Wilshire, alleging "[a]s a direct, foreseeable, and

proximate result of Wilshire's breach of its duty to defend YCP under the Wilshire Policies, YCP

has suffered and continues to suffer damages."  D.E. 1-2 [Compl. at ¶ 64-70]. YCP's complaint

was removed to this Court. D.E. 1.

## SUMMARY OF THE ARGUMENT

Wilshire argues it owes no duty to defend, claiming "Ger's claims were well known prior

to Wilshire's coverage period and the damages alleged were also occurring, and alleged to have

been occurring, prior to Wilshire's coverage period."  Mot. at 2.

Wilshire fails to demonstrate, as Florida law requires, the allegations of the Underlying

Action complaints are cast solely and entirely within either of the two exclusionary provisions

the carrier relies on and are subject to no other reasonable interpretation: exclusionary language

in the Policies' insuring agreements[1] ("Anti-Montrose Provision") and the Policies' "Exclusion

---

[1] Mot. at 3-4.

for 'Bodily Injury' or 'Property Damage' Which First Occurs Prior to the Inception of the Policy" ("Known Loss Exclusion").[2]

As demonstrated below, Wilshire's Motion must be denied.  First, the Policies and Florida law require each alleged instance of damage (each water penetration event) be treated and analyzed separately; Wilshire, to try to escape its defense obligation, improperly conflates the alleged damages and extrapolates that they all began and were known by YCP prior to inception of its Policies.  Second, paragraphs 15, 29, and 36 of the Ger Action Amended Complaint and paragraph 16 of the New Beach Complaint, at least marginally and by reasonable implication, suggest at least some new and previously-unknown damages occurred during one or more of Wilshire's Policies.   Strictly construing the Anti-Montrose Provision and Known Loss Exclusion in favor of coverage, as the Court must, the Underlying Action complaints implicate potential coverage and trigger Wilshire's duty to defend the Underlying Actions in their entireties.

Wilshire also argues for dismissal, claiming YCP fails to allege facts showing it was damaged by Wilshire's breach of contract and YCP has not sustained damages resulting from the carrier's breach.  Mot. at 9-10.  This argument fails as well.  First, YCP's allegation that "[a]s a direct, foreseeable, and proximate result of Wilshire's breach of its duty to defend YCP under the Wilshire Policies, YCP has suffered and continues to suffer damages" is sufficient at the motion to dismiss stage in this District to plead the required damages element. Second, YCP has incurred and paid unreimbursed out-of-pocket fees and costs to defend the Ger Action and significant dollars in repairs/attempts to repair the Ger Action plaintiff's unit.

Wilshire's Motion should thus be denied.

---

[2] Mot. at 5.

CASE NO.  2018-020486-CA-01

## MEMORANDUM OF LAW

I.      **LEGAL STANDARD ON RULE 12(B)(6) MOTION TO DISMISS**

In considering a motion to dismiss, the Court must accept as true all allegations in the complaint and construe them in the light most favorable to the plaintiff. *Jackson v. Bellsouth Telecomm.,* 372 F.3d 1250, 1262 (11th Cir. 2004); *Watts v. Fla. Int'l Univ.,* 495 F.3d 1289, 1295 (11th Cir. 2007).  Defendant bears the burden of proving the complaint fails to state a claim for which relief may be granted. "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (abrogated on other grounds by, *Harlow v. Fitzgerald*, 457 U.S. 800 (1982)); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (a pleader need not show probability of entitlement to relief). The Eleventh Circuit summarized the pleading standard established by the United States Supreme Court in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) as follows:

> The Supreme Court's most recent formulation of the pleading specificity standard is that "stating such a claim requires a complaint with enough factual matter (taken as true) to suggest" the required element.  The standard is one of "plausible grounds to infer."  The Court has instructed us that the rule "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element.  It is sufficient if the complaint succeeds in "identifying facts that are suggestive enough to render [the element] plausible."

*Watts*, 495 F.3d at 1295-96.

II.     **FLORIDA'S DUTY TO DEFEND STANDARD AND PRINCIPLES OF INSURANCE POLICY INTERPRETATION**

The duty to defend is broader than the duty to indemnify and depends "'solely on the allegations in the complaint[s] filed against the insured.'"  *Northland Cas. Co. v. HBE Corp*., 160 F. Supp. 2d 1348, 1360 (M.D. Fla. 2001).  Thus, when considering the duty to defend, the court ascertains whether the allegations of the underlying complaint implicate a potential for

coverage. *Id.* "If the complaint alleges facts 'partially within and partially outside the scope of coverage, the insurer is obligated to defend the entire suit.'" *Id.*; *see also Creative Hospitality Ventures, Inc. et. al. v. U.S. Liab. Ins. Co.*, 655 F. Supp. 2d 1316, 1325 (S.D. Fla. 2009). "Any doubts regarding the duty to defend must be resolved in favor of the insured." *Jones v. Fla. Ins. Guar. Ass'n, Inc.,* 908 So. 2d 435, 443 (Fla. 2005); *see also Carithers v. Mid-Continent Cas. Co.*, 782 F.3d 1240, 1246 (11th Cir. 2015) (carrier is required to resolve all uncertainties in favor of the insured).

Under Florida law, exclusionary clauses are generally disfavored and are strictly construed to afford the broadest possible coverage. *Westmoreland v. Lumbermens Mut. Cas. Co.*, 704 So. 2d 176, 179 (Fla. 4th DCA 1997); *HBE Corp.*, 160 F. Supp. 2d at 1359. Where a carrier seeks to disclaim a duty to defend based on an exclusionary provision, the insurer must show "that the allegations in the [underlying] complaint are cast solely and entirely within the policy exclusion and are subject to no other reasonable interpretation." *IDC Constr. LLC v. Admiral Ins. Co.*, 339 F. Supp. 2d 1342, 1348 (S.D. Fla. 2004).

**III.  WILSHIRE FAILS TO DEMONSTRATE THE ALLEGATIONS OF THE UNDERLYING ACTION COMPLAINTS ARE CAST SOLELY AND ENTIRELY WITHIN THE ANTI-MONTROSE PROVISION OR KNOWN LOSS EXCLUSION**

**A.  THE ANTI-MONTROSE PROVISION DOES NOT PRECLUDE A DEFENSE**

Wilshire argues the Policies' Anti-Montrose Provision precludes its duty to defend because "[t]he allegations of both the Ger Action and the New Beach Action make clear that the damages at issue first occurred in 2006, well prior to the Policies incepting, and that the claims at issue were known [] by Ger and the Association as early as 2007." Mot. at 6. Wilshire improperly conflates the alleged damages and extrapolates all damages began and were known by YCP prior to inception of its Policies.

CASE NO.  2018-020486-CA-01

### *1.*      *Each Alleged Instance of Damage Must Be Treated Separately*

Wilshire's argument fails for several reasons.  First, strictly construing the Anti-Montrose Provision to afford the broadest possible coverage for YCP, *see Westmoreland*, 704 So. 2d at 179, each alleged instance of damage (each alleged water penetration event) is treated separately. In other words, while each event may be continuing or progressive in nature, each continuing or progressive event is analyzed separately – the Policies and Florida law simply require each event begin during one of Wilshire's policy periods.  *See* D.E. 1-2 at 396-489 (COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 1. Insuring Agreement, b. This insurance applies to…'property damage' only if: (2) The….'property damage' occurs during the policy period; and (3) Prior to the policy period, no insured…knew that the…'property damage' had occurred, in whole or in part."); S. Turner, *"Which Occurs During the Policy Period" – No Previously Known Injury or Damage (the Montrose Provision)*, INS. COVERAGE OF CONSTR. DISPUTES § 6:50 (June 2018 Update) (explaining Anti-Montrose Provision does not preclude coverage for property damage that occurs during the policy period by beginning then; noting each instance of damage must be analyzed separately for purposes of Anti-Montrose Provision); *Arnett v. Mid-Continent Cas. Co.*, No. 8:08–CV–2373–T–27EAJ, 2010 WL 2821981, at *3-4 (M.D. Fla. July 16, 2010) (analyzing each instance of property damage separately [damage from pool de-humidifier vs. damage from HVAC system vs. damage from leaking windows vs. damage from stucco cracking] to determine whether same Anti-Montrose Provision precluded coverage); *Keenan Hopkins Schmidt & Stowell Contractors, Inc. v. Cont'l Cas. Co.*, 653 F. Supp. 2d 1255, 1269-72 (M.D. Fla. 2009) (analyzing each instance of property damage separately [paint defects vs. water intrusion] to determine whether known loss exclusion precluded coverage).

The Ger Action Amended Complaint states "water penetration from distinct sources and conditions has permeated Plaintiff's Unit and the Common Elements of the Condominium, entering Plaintiff's Unit from distinct entry points commencing in 2006."   Ger Action Am. Compl. at ¶ 15 (emphasis added).   It further states "[o]n each occasion, Defendants Association…warranted that a complete and permanent repair had resolved each such incident; when in truth and in fact, in the past several years, the conditions they specifically warranted were remediated have recurred and new occurrences in distinct locations of water penetration, mold and mildew have also appeared."  *Id.* (emphasis added).

Resolving any doubts regarding Wilshire's duty to defend in favor of YCP, as the Court must, these allegations identify: (1) numerous water penetration events from different sources, conditions, and entry points; and (2) many different categories of property damage sustained to different areas of the unit – i.e., ceilings, walls, floors, terrace (*id.* at ¶ 29, a.-h.).  *Jones,* 908 So. 2d at 443; *Carithers*, 782 F.3d at 1246.  Mt. Hawley thus improperly conflates the damages in its Motion in an attempt to justify its breach of its defense obligation.

### 2.   *The Allegations Suggest New, Previously-Unknown Damage Occurred During Wilshire's Policies*

Second, a fair reading of the complaint as a whole suggests paragraph 15 of the Ger Action Amended Complaint alleges some water penetration events first occurred in 2006; not, as Wilshire suggests, that all damages first occurred in 2006.  Ger Action Am. Compl. at ¶ 15.  To wit, that same paragraph also states "in the past several years" "new occurrences in distinct locations of water penetration, mold and mildew" have appeared.  *Id.* (emphasis added).  The Underlying Action complaints also allege the plaintiff, Igor Ger, "has been [past tense] damaged" and "has suffered [past tense] damages."  Ger Action Am. Compl. at ¶¶ 29, 36; New Beach Compl. at ¶ 16.

Since the Ger Action Amended Complaint was filed March 26, 2014 and the New Beach Action Complaint was filed February 18, 2015, these allegations, "at least marginally and by reasonable implication", suggest at least some new, previously-unknown damages occurred during one or more of Wilshire's Policies, implicating potential coverage and triggering Wilshire's duty to defend the Underlying Actions in their entireties.  *See, e.g., Carithers v. Mid-Continent Cas. Co.*, 782 F.3d 1240, 1247 (11th Cir. 2015) ("Property damage occurs when the damage happens [injury in fact trigger], not when the damage is discovered or discoverable [manifestation trigger/modified manifestation trigger]."); *Trizec Props. Inc. v. Biltmore Constr. Co.*, 767 F.2d 810, 813 (11th Cir. 1985) ("the actual date that the damage occurred is not expressly alleged, but the language of the complaint, at least marginally and by reasonable implication, could be construed to allege that the damage…may have begun to occur immediately after installation, 1971 to 1975, and continued gradually thereafter over a period of time"); *Travelers Prop. Cas. Co. of Am. v. Amerisure Ins. Co.*, 161 F. Supp. 3d 1133, 1137-38 (N.D. Fla. 2015) (ruling carrier owed a defense where underlying complaint did not expressly allege when property damage occurred, following *Trizec* and *Carithers*); *Amerisure Mut. Ins. Co. v. Summit Contractors, Inc.*, No. 8:11–CV–77–T–17TGW, 2012 WL 716884, at *11-14 (M.D. Fla. Feb. 29, 2012) (ruling the same Anti-Montrose Provision did not preclude carrier's duty to defend against two underlying complaints claiming water intrusion and other defects, where the complaints did not expressly allege the dates the damages occurred); *Transp. Ins. Co. v. Regency Roofing Cos., Inc.*, No. 07-80830-CIV, 2007 WL 2904156, at *4-5 (S.D. Fla. Oct. 4, 2007) (ruling the same Anti-Montrose Provision did not preclude duty to defend against an underlying complaint claiming water intrusion and other damages, where the complaint did not establish the insured knew of certain damages prior to policy inception); *Creative Hospitality*, 655 F. Supp. 2d

at 1325 ("[I]f the complaint avers facts showing more than one basis for liability – one falling within the insurance coverage and the others, outside – the insurer must defend the entire suit").

In sum, Wilshire failed to carry its burden to demonstrate the allegations of the Underlying Action complaints "are cast solely and entirely within the [Anti-Montrose Provision] and are subject to no other reasonable interpretation." *IDC Constr.*, 339 F. Supp. 2d at 1348. Further, Wilshire's failure to resolve all doubts regarding its defense obligation in favor of YCP constitutes a breach of the carrier's duty to defend. *See Jones,* 908 So. 2d at 443.

### 3. *Wilshire's Cases Do Not Support Dismissal*

Wilshire's cases do not support dismissal. *Interstate Fire & Casualty Co. v. Abernathy*, 93 So. 3d 352 (Fla. 1st DCA 2012)[3] is not instructive. There, the court reversed the lower court's entry of judgment in favor of the insured's assignee, ruling fortuity and known loss principles prevented a certificate of insurance from extending coverage for an accident that had occurred, and the insured knew of, 4 days before the certificate was issued. Here, as stated in Section III.A *supra*, unlike in *Abernathy*, the allegations of the Underlying Action complaints, at least marginally and by reasonable implication, suggest at least some new, previously-unknown damages occurred during one or more of Wilshire's Policies, implicating potential coverage and triggering Wilshire's duty to defend.

Wilshire cites *Keenan Hopkins Schmidt & Stowell Contractors, Inc. v. Continental Casualty Co.*, 653 F. Supp. 2d 1255 (M.D. Fla. 2009) as supporting its position that the Policies' Anti-Montrose Provision precludes a defense. Mot. at 7. It does not. The court there did not analyze the Anti-Montrose Provision found in Wilshire's Policies.[4]

---

[3] Mot. at 7.

[4] To the extent Wilshire also argues *Keenan* supports its position that a purported common-law known loss doctrine precludes a defense, that argument also fails. The court there expressly

*General Housewares Corp. v. National Surety Corp.*, 741 N.E.2d 408 (Ind. Ct. App. 2000)[5] and *Westfield Insurance Co. v. Sheehan Construction Co., Inc.*, 580 F. Supp. 2d 701 (S.D. Ind. 2008)[6] are neither binding nor instructive.  The court in *General Housewares* addressed as a matter of first impression in Indiana whether the known loss doctrine applies to liability policies. 741 N.E.2d at 413.  Further, the *General Housewares* court stated partial summary judgment in favor of the carrier should have been entered by the lower court, where <u>record evidence</u> established the insured knew its liability in relation to contaminated sites had occurred prior to the policy periods.  *Id.* at 417-18.

The *Sheehan* court addressed at the summary judgment stage whether an Anti-Montrose Provision, not a known loss exclusion as Wilshire claims (Mot. at 8), precluded the insurer's <u>duty to indemnify</u>.  580 F. Supp. 2d at 716.  The court found there was no indemnity obligation because record evidence (letters to and from the insured) established the insured knew of all damages prior to policy inception.  *Id.*

*Arnett v. Mid-Continent Casualty Co.*, No. 8:08–CV–2373–T–27EAJ, 2010 WL 2821981 (M.D. Fla. July 16, 2010)[7] does not dictate the result.  The court there addressed at the summary judgment stage whether an Anti-Montrose Provision, not a known loss exclusion as Wilshire maintains (Mot. at 7), precluded the insurers' <u>duty to indemnify</u>.  *Id.* at *3-4.  Further, the insured there, unlike YCP, admitted it was aware of the damages before one carrier's (Mid-Continent) first policy incepted.  *Id.* at *4.  As to the other carrier's (Great American) policy, the

---

declined to address the carrier's argument that a so-called common-law known loss doctrine precluded coverage.  653 F. Supp. 2d at 1269.  The court, in fact, noted "it seems unlikely that Florida courts would recognize such a common-law doctrine."  *Id.* at 1269, n. 4.

[5] Mot. at 7.

[6] Mot. at 8.

[7] Mot. at 7-8.

record evidence established as follows:  some damages (damage from the pool de-humidifier, and damage from the HVAC system) were not known to the insured prior to policy inception, while others (damage from leaking windows, and damage from stucco cracking) were.  *Id.*

Here, unlike in *Keenan*, *General Housewares*, *Sheehan*, and *Arnett*, the issue before the Court is the duty to defend.  The duty to defend analysis is limited to the 8 corners of the policy and the underlying complaint; record evidence, like that considered by the courts in *Keenan*, *General Housewares*, *Sheehan*, and *Arnett*, is irrelevant to the defense issue.  *HBE Corp.*, 160 F. Supp. 2d at 1360.

*Quanta Indemnity Co. v. Davis Homes, LLC*, 606 F. Supp. 2d 941 (S.D. Ind. 2009) is neither binding on the Court nor persuasive.  There, the court found, at the summary judgment stage, the carrier owed no duty to defend pursuant to an Anti-Montrose Provision, not a known loss exclusion as Wilshire asserts (Mot. at 8), where the insured was served with the underlying complaint alleging bodily injuries on August 20, 2003, and thus knew of the injuries almost 2 years before policy inception (June 1, 2005).  *Id.* at 947-48.  The court also concluded the Anti-Montrose Provision precluded a defense against the amended complaint, as it alleged an injury (death) that was simply a "continuation, change, or resumption" of the injuries detailed in the original complaint (electrical shock and brain stem injury).  *Id.* at 948-49.  Here, as outlined in Section III.A *supra*, unlike in *Quanta*, the allegations of the Underlying Action complaints reasonably suggest at least some new, previously-unknown damages occurred during one or more of Wilshire's Policies, implicating potential coverage and Wilshire's defense obligation.

In addition, the *Quanta* court noted under Indiana law "courts may properly consider the evidentiary materials offered by the parties to show the coverage or exclusion", and stated certain extrinsic record evidence buttressed its conclusion.  *Id.* at 949, n. 8.  The injured

claimant's physician testified *via* an affidavit that the injured claimant's "injuries and his subsequent death were all proximately caused by the electrical shock that he suffered on September 6, 2002 [prior to policy inception]." *Id.* Florida law does not permit consideration of such record evidence when considering the defense question. *HBE Corp.*, 160 F. Supp. 2d at 1360.

### B. THE KNOWN LOSS EXCLUSION DOES NOT PRECLUDE THE CARRIER'S DUTY TO DEFEND

Wilshire also claims the Known Loss Exclusion precludes its duty to defend because "the Underlying Actions allege knowledge by both the Association and Ger of the claimed damages years prior to Wilshire's Policies incepting….".  Mot. at 8.

The Known Loss Exclusion does not preclude a defense; Wilshire again failed to carry its burden to establish the allegations of the Underlying Action complaints "are cast solely and entirely within the [] [E]xclusion and are subject to no other reasonable interpretation."  *IDC Constr.*, 339 F. Supp. 2d at 1348.

Strictly construing the Known Loss Exclusion to afford the broadest possible coverage for YCP, *see Westmoreland*, 704 So. 2d at 179, the Known Loss Exclusion does not preclude Wilshire's duty to defend the Underlying Actions for the reasons outlined in Section III.A *supra*. *See also IDC Constr., LLC v. Admiral Ins. Co.*, 339 F. Supp. 2d 1342, 1350-51 (S.D. Fla. 2004) (ruling an even broader known loss exclusion did not preclude a defense because the insurer failed to carry its burden to demonstrate the allegations of the underlying complaint were "cast solely and entirely within the Exclusion" and "subject to no other reasonable interpretation"; concluding the underlying complaint, alleging water intrusion damages to different property components (drywall, carpeting, furnishings, and other property) in various locations from

different sources/conditions/entry points, "implicate[d] potential coverage" because the complaint did not "specify the exact date when the damages first occurred").

Nor do any of the cases cited by Wilshire for this proposition support dismissal. For example, the carrier relies on *Keenan* to claim the Known Loss Exclusion precludes its duty to defend.  Mot. at 7-8.  The carrier's argument is meritless.  The *Keenan* court addressed at the summary judgment stage whether a different exclusion precluded the insurer's <u>duty to indemnify</u>.  653 F. Supp. 2d at 1269-72 (looking to record evidence, including the insured's memorandums and letters, and a change order, to assess the indemnity question).  Here, unlike in *Keenan*, the issue before the Court is Wilshire's defense obligation.  The duty to defend analysis is limited to the 8 corners of the policy and the underlying complaint; record evidence, like that considered by the court in *Keenan*, is irrelevant to the defense issue.  *HBE Corp*., 160 F. Supp. 2d at 1360.

**IV.    YCP HAS SUFFERED DAMAGES AS A RESULT OF WILSHIRE'S BREACH OF CONTRACT, AND ALLEGES SAME, SUFFICIENT TO SUPPORT COUNT V**

      **A.    YCP HAS SUFFICIENTLY ALLEGED A BREACH OF CONTRACT CLAIM AGAINST WILSHIRE**

Wilshire claims "the Association has failed to allege with any specificity what damage it has suffered as a result of said breach." Mot. at 9.  Wilshire misrepresents the level of pleading required on a motion to dismiss in this District.  As the carrier admits, YCP alleges "[a]s a direct, foreseeable, and proximate result of Wilshire's breach of its duty to defend YCP under the Wilshire Policies, YCP has suffered and continues to suffer damages."  *Id.*; D.E. 1-2 [Compl. at ¶ 77]. That allegation is sufficient at the motion to dismiss stage in this District to plead the required damages element.  *See, e.g., Rodriguez v. State Farm Mut. Auto. Ins. Co.*, No. 1:13-CV-21386-DLG, 2013 WL 12064853, at \*2 (S.D. Fla. June 18, 2013) (denying carrier's motion to

dismiss complaint, finding allegation that "Plaintiff has suffered damages" "as a result of the breach" was sufficient to state damages element of breach of contract claim); *Medytox Diagnostics, Inc. v. Samuels*, No. 14-CIV-20719-ALTONAGA, 2014 WL 12606310, at \*5 (S.D. Fla. July 18, 2014) (denying motion to dismiss complaint, finding allegation that plaintiff "suffered damage as a result" of the alleged contract breach was sufficient to state damages element of breach of contract claim; "Plaintiffs have pleaded they were damaged as a result of the breach, which is accepted as true at the motion to dismiss stage"); *Yacht Club on the Intracoastal Condo. Ass'n, Inc. v. Lexington Ins. Co.*, No. 10–81397–CIV–HURLEY/HOPKINS, 2010 WL 11561157, at \*1 (S.D. Fla. Nov. 30, 2010) (denying carrier's motion to dismiss amended complaint, finding allegation that plaintiff "has suffered general compensatory damages" was sufficient to state damages element of breach of contract claim and specific enough "to enable the defendant to formulate an intelligible answer").

**B.      YCP HAS SUFFERED DAMAGES AS A RESULT OF WILSHIRE'S BREACH OF CONTRACT, SUFFICIENT TO SUPPORT COUNT V**

Wilshire erroneously posits, "the Association has suffered no damages".  Mot. at 10. YCP has incurred and paid out-of-pocket covered fees and costs to defend the Ger Action. YCP's defending carriers have refused to reimburse YCP for those covered fees and costs, billed by the law firm Halpern Rodriguez, LLP (YCP's defense counsel in relation to the Ger Action before insurer-appointed defense counsel took over YCP's defense). *See* Aug. 11, 2014 Ltr. from Mt. Hawley to YCP; a copy is attached as Ex. A (without enclosures).[8]/[9]

---

[8] The Letter's enclosures (legal invoices) are not attached as they contain potentially-privileged information relevant to the defense of the underlying action.

[9] A court may consider documents attached to a response to a motion to dismiss without converting the motion into one for summary judgment pursuant to the "incorporation-by-reference doctrine"; the attached documents must be "(1) central to the plaintiff's claim and (2) undisputed." *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005); *see First Mut. Grp., LP v.*

Further, while Mt. Hawley, Tudor, and Columbia are presently defending YCP, they are doing so under a reservation of rights to disclaim coverage. D.E. 12 [Answer at ¶ 23]; D.E. 13 at ¶ 24; D.E. 11 at ¶ 25.   While YCP disagrees with the carriers' reservations, the carriers nonetheless have stated there is no coverage under their policies, citing various exclusions and provisions. And, Mt. Hawley has requested a declaration of no coverage from this Court. Mt. Hawley's Countercl. [D.E. 12] at 24. Wilshire is not entitled – not should it be permitted – to shirk its personal and legal obligations to its insured simply because other carriers are presently providing a qualified defense.   *See* D.E. 1-2 [Compl. at ¶ 26]; *Argonaut Ins. Co. v. Maryland Cas. Co.*, 372 So. 2d 960, 963 (Fla. 3d DCA 1979) (each carrier has an independent and personal contractual duty to defend its insured regardless of what any other carrier does; "The agreement to defend contemplates the rendering of services. The insurer must investigate, and conduct defense, and may if it deems it expedient, negotiate and make a settlement of the suit. These matters each insurer is required to do regardless of what the other insurer is doing"; "As to the assured, neither one is excused to any extent from its full duty to defend, no matter what the other does. The duty to defend is personal to the particular insurer. It is not entitled to divide that duty with or require contribution from the other."); *Columbia Cas. Co. v. Ker, Inc.*, No. 6:07–cv–65–Orl–22KRS, 2008 WL 11338289, at *10 (M.D. Fla. Oct. 29, 2008) ("An insurer must provide a full defense to the insured, and the presence of multiple insurers does not excuse any single insurer from fully defending the insured.") (citing *Argonaut);* S. Plitt, D. Maldonado, J. Rogers & J. Plitt, *Duty to Defend Among Primary Insurers; Generally*, 14 COUCH ON INS. §

---

*Johnson*, No. 14-24159-CIV-WILLIAMS, 2015 WL 12766387, at *3, n. 1 (S.D. Fla. May 12, 2015) (applying the "incorporation-by-reference doctrine" in relation to documents attached to a response to a motion to dismiss). "'[U]ndisputed' means that the authenticity of the document is not challenged." *Day*, 400 F.3d at 1276. The Letter attached as Exhibit A is central to YCP's breach of contract claim (damages element) and cannot reasonably be disputed as inauthentic.

200:35 (June 2018 Update) ("[B]ecause each insurer has a separate and independent contractual duty to defend, the fact that another insurer may owe a duty to provide a defense will not excuse an insurer's failure to honor its obligation").

In addition, YCP has paid significant dollars in covered repairs/attempts to repair the Ger Action plaintiff's unit.  *See* Apr. 11. 2018 Dep. Tr. of Ronnie Ben-David at 82:19-83:1; 83:13-84:18; a copy is attached as Exhibit B.[10]/[11] Should the Court find YCP has not adequately alleged damages to support Count V of its complaint (YCP has), YCP will amend its complaint to list its damages. YCP thus requests any dismissal be without prejudice or with leave to amend. *See* S. Gensler, *Rule 8. General Rules of Pleading*, FED. RULES OF CIVIL PROCEDURE, RULES & COMMENTARY (Feb. 2018 Update) ("When a complaint is dismissed for failing to meet the requirements of Rule 8, the court should ensure that the plaintiff has, or has had, a fair opportunity to submit a sufficient pleading. One technique is for the dismissal to be without prejudice. Alternatively, the court can dismiss with leave to amend.").

## C.   WILSHIRE'S CASES DO NOT SUPPORT DISMISSAL OF COUNT V OF YCP'S COMPLAINT

The cases Wilshire cites in support of its position that YCP has failed to allege and has not sustained damages do not dictate dismissal. *Caldwell v. Allstate Insurance Co.*, 453 So. 2d 1187 (Fla. 1st DCA 1984) and *Eller Media Co. v. National Union Fire Insurance Co. of Pittsburgh, PA*, No. 07–20619–CIV, 2008 WL 4224292 (S.D. Fla. Sept. 11, 2008) are decisions

---

[10] The information in the transcript attached as Exhibit B is also central to YCP's breach of contract claim (damages element) and cannot reasonably be disputed as inauthentic. *See* n. 8 *supra*.

[11] These damages relate to Wilshire's indemnity obligation – an unripe issue at this time. *See* D.E. 1-2 [Compl. at n. 5] ("YCP is not seeking a judgment at this time regarding Wilshire's breach of its duty to indemnify YCP under the Wilshire Policies, as it is not yet ripe for adjudication.  YCP, however, does not waive/is not estopped from and specifically reserves its right to claim Wilshire breached its duty to indemnify YCP under the Wilshire Policies for the Underlying Actions, once the Underlying Actions are resolved.").

rendered on motions for summary judgment/on appeal from entry of summary judgment, rather than at the motion to dismiss stage.

Nor does *Hall v. HSBC Mortgage Services, Inc.*, 581 Fed. Appx. 800 (11th Cir. 2014) dictate the result urged by Wilshire. That case involved an appeal from the district court's denial of the plaintiff's motion for leave to file an amended complaint. Applying Georgia law, the court analyzed a cause of action arising from a mortgage company's foreclosure on plaintiff's property and subsequent efforts to evict him from the property.

In sum, Wilshire's cases are unpersuasive and do not support dismissal of Count V of YCP's Complaint.

## CONCLUSION

For the foregoing reasons, Yacht Club at Portofino Condominium Association, Inc., requests the Court enter an Order denying Wilshire Insurance Company's Motion to Dismiss Count V of Plaintiff's Complaint [D.E. 31] and for such other relief this Court deems equitable, just, and proper.

Respectfully submitted,

VER PLOEG & LUMPKIN, P.A.
100 S.E. Second Street
Thirtieth Floor
Miami, Florida 33131
Tel: (305) 577-3996
Fax: (305) 577-3558

*/s/ Christine A. Gudaitis*
**Christine A. Gudaitis, Esq.**
Florida Bar No. 0502693
**Ashley B. Jordan, Esq.**
Florida Bar No. 71924
cgudaitis@vpl-law.com
ajordan@vpl-law.com
*Attorneys for Yacht Club at Portofino*
*Condominium Association, Inc.*

Page 17

CASE NO.  2018-020486-CA-01

## CERTIFICATE OF SERVICE

**I hereby certify** that a true and correct copy of the foregoing was served via transmission

of Notices of Electronic Filing generated by CM/ECF on this 24th day of September 2018 on all

counsel of record on the Service List below.

*/s/ Christine A. Gudaitis*
**Christine A. Gudaitis, Esq.**

## SERVICE LIST

Christine A. Gudaitis, Esq.
Ashley B. Jordan, Esq.
Ver Ploeg & Lumpkin, P.A.
100 S.E. Second Street
Thirtieth Floor
Miami, FL 33131
Telephone: (305) 577-3996
Facsimile: (305) 577-3558
cgudaitis@vpl-law.com
ajordan@vpl-law.com
*Attorneys for Plaintiff*
*Yacht Club at Portofino Condominium*
*Association, Inc.*

Lisa A. Pach, Esq.
CNA Coverage Litigation Group
4631 Woodland Corporate Blvd.
Suite 315
Tampa, FL 33614
Telephone: (813) 880-5165
Facsimile: (813) 880-5175
Lisa.pach@cna.com
donna.matesa@cna.com
*Attorneys for Defendant*
*Columbia Casualty Company*

Ira S. Bergman, Esq.
Dana S. Schulman, Esq.
Litchfield Cavo LLP
600 Corporate Drive
Suite 600
Ft. Lauderdale, FL 33334
Telephone: (954) 689-3000
Facsimile: (954) 689-3001
bergman@litchfieldcavo.com
schulman@litchfieldcavo.com
*Attorneys for Defendant*
*AmTrust International Underwriters*
*Limited*

Garrett Raines, Esq.
Ryan S. Stratton, Esq.
Banker Lopez Gassler, P.A.
501 E. Kennedy Blvd., Suite 1700
Tampa, FL 33602
Telephone: (813) 221-1500
Facsimile: (813) 222-3066
graines@bakerlopez.com
*Attorneys for Defendant*
*Mt. Hawley Insurance Company*

CASE NO.  2018-020486-CA-01

Robert S. Covitz, Esq.
Falk, Waas, Hernandez, Cortina,
Solomon
& Bonner, P.A.
1900 N.W. Corporate Blvd., Suite 210-E
Boca Raton, FL 33431
Telephone: (561) 367-2510
Facsimile: (561) 807-6633
serviceRcovitz@falkwaas.com
*Attorneys for Defendant*
*Tudor Insurance Company*

Pedro E. Hernandez, Esq.
Nicole Di Pauli Gould, Esq.
Hinshaw & Culbertson LLP
2525 Ponce de Leon Blvd., 4th Floor
Coral Gables, FL 33134
Telephone: (305) 358-7747
Facsimile: (305) 577-1063
phernandez@hinshawlaw.com
ndipauligould@hinshawlaw.com
*Attorneys for Defendant*
*Wilshire Insurance Company*

Lauren S. Curtis, Esq.
Traub Lieberman Straus &
Shrewsberry LLP
First Central Tower
460 Central Avenue, Suite 1000
St. Petersburg, FL 33701
Telephone: (727) 898-8100
Facsimile: (727) 895-4838
lcurtis@traublieberman.com
*Attorneys for Defendant*
*Century Surety Company*